

**FILED & ENTERED**

**JAN 27 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Chasen Kyle Stanley,<br>         Debtor. | Case No.:   2:17-bk-15178-ER<br>Chapter:    7<br><br>**MEMORANDUM OF DECISION GRANTING MOTION TO REOPEN**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    Before the Court is the *Motion to Reopen Chapter 7 [Case] Pursuant to 11 U.S.C. § 350(b) for the Purpose of According Relief to Debtor Re: Abandonment of Asset* [Doc. No. 32] (the "Motion to Reopen") filed by Chasen Kyle Stanley (the "Debtor"). The Debtor seeks to reopen his case to obtain a ruling that the Chapter 7 Trustee (the "Trustee") has already abandoned the estate's interest in certain litigation claims (the "Motion to Abandon"). In the alternative, the Debtor requests the appointment of a Trustee upon reopening to investigate and determine whether to administer the litigation claims. The Motion to Reopen is opposed by Jason Lilly Association, Steve McKay, Michele McKay, Jason Lilly, Josiah Lilly, and Jason Lilly, LLC (collectively, the "Objectors").

    Pursuant to Civil Rule 78(b), LBR 5010-1(e), and LBR 9013-1(q),[1] the Court finds this matter suitable for disposition without oral argument. For the reasons set forth below, the Court will **GRANT** the Motion to Reopen and order the United States Trustee (the "UST") to reappoint a Trustee to investigate the litigation claims.[2]

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[2] The Court has reviewed the following pleadings in adjudicating this matter:

## I. Background

The Debtor filed a voluntary Chapter 7 petition on April 27, 2017.[3] On June 6, 2017, the Trustee issued a Report of No Distribution.[4] The Debtor received a discharge on August 14, 2017,[5] and the case was closed on August 22, 2017.[6]

On April 26, 2018, upon the Debtor's motion, the Court reopened the case so that the Debtor could file amended schedules.[7] In his amended schedules, the Debtor disclosed an interest in several business entities, including "Jason Lilly Association, a non-profit association."[8] In the column requiring him to specify his ownership interest in Jason Lilly Association ("JLA"), the Debtor stated "N/A."[9] The Debtor valued his interest in JLA at $0.00.[10] In ¶ 33 of Schedule A/B—which requires debtors to list "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment"—the Debtor did not schedule any causes of action related to his interest in JLA.[11] On November 15, 2018, the Trustee issued a second Report of No Distribution. The case was re-closed on December 18, 2018.

On February 7, 2020, the Debtor filed a Complaint against the Objectors in the Orange County Superior Court (the "State Court Action"). The gravamen of the Complaint was that the Objectors had wrongfully ousted the Debtor from JLA. On June 30, 2020, the Debtor filed a First Amended Complaint. On November 23, 2020, the State Court sustained the Objectors' demurrer to the First Amended Complaint, but gave the Debtor leave to file a Second Amended Complaint. In sustaining the demurrer, the State Court found that the Debtor was judicially estopped from prosecuting his claims against the Objectors because he had failed to disclose those claims in his amended schedules and had valued his interest in JLA at $0.00:

> Here, [Objectors] point out that [the Debtor] failed to mention not only his interest in JLA dba Kannabis Works, but also failed to mention the claims he allegedly possessed relating to his ouster (which occurred during the bankruptcy proceedings and before he filed his supplemental schedules/disclosures). [The Debtor] counters that the JLA dba Kannabis Works he was a partner in pre-petition was not the same JLA dba Kannabis Works he was a partner in post-petition because the prepetition version was operating as

---

1) Notice of Motion and Motion to Reopen Chapter 7 Pursuant to 11 U.S.C. § 350(b) for the Purpose of According Relief to Debtor Re: Abandonment of Asset [Doc. No. 32];
2) Jason Lilly Association, Steve McKay, Michele McKay, Jason Lilly, Josiah Lilly, and Jason Lilly, LLC's Opposition to Former Debtor's Motion to Reopen [Doc. No. 34]; and
3) Response to Interested Parties' Opposition to Debtor's Motion to Reopen Chapter 7 Pursuant to 11 U.S.C. § 350(b) for the Purpose of According Relief to Debtor Re: Abandonment of Asset [Doc. No. 40].

[3] Doc. No. 1.
[4] Doc. No. 14.
[5] Doc. No. 19.
[6] Doc. No. 21.
[7] Doc. No. 24.
[8] Amended Schedule A/B [Doc. No. 26] at ¶ 42.
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶ 33.

a non-profit whereas the post-petition version switched to a "for profit." This is a distinction without a legal difference. The entity remained the same, the EIN remained the same, and the location remained the same. The fact that it may have changed its tax basis does not mean it became an entirely new interest. The [Debtor's] 25% in the company never changed, just his hope for financial success. He did not disclose that interest in his initial filings, and, when he did disclose it in his supplemental filings, he claimed his 25% amounted to zero dollars. This representation left the trustee believing this was a no asset bankruptcy, and left his creditors with nothing. To be clear, the asset is his 25% interest in JLA dba Kannabis Works, which he acquired pre-petition and which he now claims to have serious value (despite claiming no value in his bankruptcy case). This is classic case for judicial estoppel.

State Court Ruling Sustaining Objectors' Demurrer to First Amended Complaint [Doc. No. 34, Ex. K, at 203–205].[12]

On December 18, 2020, the Debtor filed the Second Amended Complaint. On May 10, 2020, the State Court sustained the Objectors' demurrer to the Second Amended Complaint, but again gave the Debtor leave to amend. The State Court explained:

> [The Debtor's] characterization of underlying events has morphed through the course of the pleadings. In the original Complaint and in the First Amended Complaint, [the Debtor] alleged that the association with the individual defendants (Jason Lilly Association) was a continuous one; it was intended to open a cannabis dispensary as a nonprofit venture, and later it was decided to be a for-profit business—but it was the same association….
>
> In the Second Amended Complaint, [the Debtor] alleges there were two fundamentally separate associations, each named Jason Lilly Association. One was formed in September 2015 to operate a dispensary in a nonprofit fashion, and one was formed in January 2018 to operate a dispensary as a for-profit enterprise. [The Debtor] seeks to draw a bright line between the two, treating them as independent business entities….
>
> Although the court considered sustaining the demurrer without leave to amend, a new filing in Bankruptcy Court might cure the standing issue and actions taken by the Bankruptcy Court could shed light on issues, such as bad faith, which could be useful for the Court in exercising its equitable powers under judicial estoppel. As a result, the court will allow one additional opportunity to amend after any actions taken in the Bankruptcy Court.

State Court Ruling Sustaining Objectors' Demurrer to Second Amended Complaint [Doc. No. 34, Ex. M, at 255–56].

The Debtor now moves to reopen his bankruptcy case for the purpose of obtaining a ruling upon the Debtor's motion for a finding that the estate's interest in the Debtor's claims pertaining to JLA has already been abandoned. In the alternative, the Debtor requests the appointment of a Trustee upon reopening to investigate the Debtor's claims pertaining to JLA and to determine whether those claims will be administered. The Objectors oppose the Motion to Reopen. They

---

[12] Page citations are to the CM/ECF pagination for Doc. No. 34.

argue that the Debtor has engaged in "brazen and dishonest conduct" by failing to disclose his claims pertaining to JLA in his amended schedules, and that the Motion to Reopen should be denied as a result of this alleged bad faith.[13]

## II. Findings of Fact and Conclusions of Law

Section 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." In determining whether a case should be reopened, the Court must consider "whether further administration appears to be warranted" and "whether a trustee should be appointed." *Lopez v. Specialty Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 26 (B.A.P. 9th Cir. 2002). A case must be reopened "where 'assets of such probability, administrability, and substance' appear to exist 'as to make it unreasonable under all the circumstances for the court not to deal with them.' A motion to reopen can be denied, however, where the chance of any substantial recovery for creditors appears 'too remote to make the effort worth the risk.'" *Id.* at 27 (internal citations omitted).

Objectors contend that the Motion to Reopen should be denied because the Debtor acted in bad faith by failing to schedule his claims against them. Objectors cite in *In re Lowery*, 398 B.R. 512 (Bankr. E.D.N.Y. 2008), in which the court refused to allow a debtor to reopen her case to schedule a previously undisclosed personal injury claim. According to the *Lowery* court:

> If debtors could omit personal injury actions or other lawsuits, and then simply move to reopen once caught, nondisclosure would be altogether too attractive. The public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors.

*Lowery*, 398 B.R. at 516.

Objectors' reliance upon *Lowery* is misplaced. The *Lowery* court expressly acknowledged that its emphasis upon the debtor's good faith was at odds with *Lopez*, a case adjudicated within the Ninth Circuit:

> In deciding motions to reopen bankruptcy cases to administer an undisclosed lawsuit, courts seem to have developed two approaches. One view is that a debtor's good faith is essentially not relevant to the reopening of a case when adding the asset will benefit estate creditors. *See Lopez v. Specialty Restaurants Corp. (In re Lopez),* 283 B.R. 22 (9th Cir. BAP 2002); *In re Strickland,* 285 B.R. 537 (Bankr.S.D.Ga.2001). The other view is that good faith is an important element that a court looks to in authorizing the reopening of a bankruptcy case to include a lawsuit of the debtor. *See Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1289 (11th Cir.2002); *In re Koch,* 229 B.R. 78, 87–88 (Bankr.E.D.N.Y.1999); *In re Maloy,* 195 B.R. 517, 520 (Bankr.M.D.Ga.1996). With all due respect to the *Lopez* and *Strickland* courts, we are persuaded that policy considerations militate against adopting a rule that good faith is irrelevant to the reopening of a bankruptcy case to administer undisclosed lawsuits.

*Lowery*, 398 B.R. at 515.

---

[13] Doc. No. 34 at 6.

In *Lopez*, the court found that even the debtor's intentional concealment of a potential asset was not sufficient cause to refuse to reopen the case. The *Lopez* court explained that the focus should be upon whether reopening the case would benefit creditors. It concluded that refusing to reopen a case to sanction a debtor for failing to disclose an asset was an abuse of discretion:

> The bankruptcy court appeared to be motivated in part by a desire to sanction Lopez for not previously disclosing the Action…. Assuming without deciding that Lopez intentionally omitted the Action from her schedules and statements, that is not a sufficient ground to deny the Motion to Reopen. That approach would risk harming creditors in an attempt to punish a former debtor.

*Lopez*, 283 B.R. at 29.

*Lopez* was decided by the Bankruptcy Appellate Panel and is therefore not binding upon the Court. *In re Arnold*, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012) (holding that decisions issued by the Bankruptcy Appellate Panel are not binding upon lower courts). Nonetheless, the Court finds the approach set forth in *Lopez* to be better reasoned than that set forth in *Lowery*. Sanctioning a debtor's failure to disclose a potential asset by refusing to reopen a case to permit correction of the omission makes little sense given that it is unsecured creditors who will bear the brunt of the harm.

Therefore, in deciding the Motion to Reopen, the Court declines to consider whether the Debtor acted in bad faith by failing to schedule his claims against the Objectors. The Court's only consideration is whether "assets of such probability, administrability, and substance appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them." *Lopez*, 283 B.R. at 26 (internal quotation marks omitted).

There is a strong possibility that the Debtor's claims pertaining to JLA may be an asset of the estate[14] with significant value. On June 22, 2018, the Debtor's attorney sent an e-mail to Josiah Lilly ("Lilly"), one of JLA's members, proposing that JLA could be sold for more than $5 million.[15] A February 2, 2018 e-mail from the Debtor's attorney to Lilly stated that Lilly had invested at least $900,000 in JLA.[16] The Debtor believed that JLA had sufficient value to warrant the commencement of the State Court Action. In sum, there is sufficient evidence that the Debtor's claims against JLA may have value to warrant the reopening of the case and the appointment of a Trustee to investigate this potential asset.

It is not appropriate for the Court to conduct a hearing on the Motion to Abandon until after the Trustee has had sufficient time to investigate whether the Debtor's claims against JLA are an asset of the estate that is worth administering. Concurrently with the issuance of this Memorandum of Decision, the Court will enter an order reopening the case, directing the UST to reappoint a Trustee, and setting a hearing and briefing schedule on the Motion to Abandon.

---

[14] In connection with the Motion to Reopen, the Court makes no determination as to whether the claims pertaining to JLA asserted in the State Court Action arose post-petition or pre-petition. The Court finds only that there is a sufficient possibility that the claims in the State Court Action are an asset of the estate to warrant the reopening of the case and the reappointment of a Trustee to investigate the potential asset.

[15] E-mail from Amanda Potier to Josiah Lilly dated Friday, June 22, 2018 [Doc. No. 34-1 at 11].

[16] E-mail from Amanda Potier to Josiah Lilly dated Friday, February 2, 2018 [Doc. No. 34-1 at 4].

###

Date: January 27, 2022

Ernest M. Robles
United States Bankruptcy Judge